## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

NICHOLAS SOLIS,                        )
                                       )
      Plaintiff,                 )
                                       )    No. 20 C 1467
    v.                             )
                                       )    Judge Sara L. Ellis
COOK COUNTY SHERIFF'S                  )
OFFICE, COUNTY OF COOK,                )
COOK COUNTY SHERIFF THOMAS DART, )
and                                    )
PAUL VILLANUEVA,                       )
                                       )
      Defendants.                )

## <u>OPINION AND ORDER</u>

Plaintiff Nicholas Solis spent an additional 66 days in Cook County Jail with no legal basis for holding him after a judge ordered his release. Once out of custody, Solis filed this civil rights lawsuit against Officer Villanueva, Sheriff Dart, the Cook County Sheriff's Office, and Cook County (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights and failure to train under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978), and state law claims for false imprisonment and indemnification from Cook County for any judgment against the Sheriff's Office. The parties filed cross-motions for summary judgment; the Court grants in part and denies in part the parties' cross-motions. Because no material question of fact exists regarding Defendants' liability on Counts I and III, the Court grants Solis' motion for summary judgment except for the portion of Count I based on the Fourteenth Amendment. Accordingly, the Court grants Defendants' motion for summary judgment on Count I to the extent it relies on the Fourteenth Amendment and denies the remainder of Defendants' motion.

# BACKGROUND[1]

The parties agree that, due to Defendants' errors, Solis spent over two additional months in Cook County Jail (the "Jail") without probable cause and without any reasonable justification. Solis entered the Jail after his arrest on charges for failure to satisfy the conditions of his probation and for obstructing identification. While those cases were pending, the Jail received a writ of habeas corpus for Solis in a juvenile case. Upon receiving that writ and without any further investigation, Officer Villanueva placed a "hold" on Solis, preventing his release. As described further, this hold led to Solis spending 66 additional days in custody after a judge ordered his release.

On April 25, 2018, Solis pleaded guilty to a violation of 720 ILCS § 5/24-1.6(A)(1), relating to unlawful possession of a firearm, and received 18 months of probation. On September 24, 2019, as the end of his probation approached, Solis' probation officer reported that Solis had not completed his probation requirements and the court issued an arrest warrant. The police pulled Solis over on October 14, 2019. During the traffic stop, Solis provided a false name to the police officers but the officers later accurately identified him. The officers arrested Solis based on his outstanding warrant and for obstructing identification, and Solis arrived at the Jail the following morning.

A week later, a court issued a writ of habeas corpus for Solis in *State v. Adam Martinez*, 2017JD00244, a juvenile case. Solis was not a defendant in that matter. That same day, the Cook County State's Attorney's Office emailed a copy of the writ to the "DOC Records" email address, a general mailbox monitored by Defendant Villanueva's department at the Cook County

---

[1] The Court derives the facts in this section from the Joint Statement of Undisputed Material Facts and accompanying exhibits. The Court has included in this background section only those portions of the Joint Statement of Undisputed Material Facts that are appropriately presented, supported, and relevant to resolution of the pending motions for summary judgment. The Court takes all facts in the light most favorable to the non-movant for each motion.

Sheriff's Office (the "Sheriff's Office").  After receiving the writ, Villanueva placed a hold on

Solis, noting Solis' court date of October 29, 2019, per the writ.  A hold is "an entry that

[correctional officers] enter into [the] jail management system notifying [correctional officers]

that there is an external agency or item or issue pertaining to that [inmate] that needs to be

addressed or looked at before any possible release."  Doc. 60-8 at 7.

When he entered the hold, Villanueva did not know whether Solis was a codefendant in

*State v. Martinez* or simply a witness.  Villanueva testified that "oftentimes, when we receive

juvenile writs, we also receive additional information either telling us that the subject is a witness

on the case or he is an accused on the case."  Doc. 60 at 4.  Villanueva did no further

investigation before entering the hold.  Villanueva's training instructed him to place a hold on

juvenile cases as a "safeguard" unless he received additional information along with the writ.

*See* Doc 60-8 at 8 ("I was trained to enter a no-bond hold for [juvenile delinquent] cases unless

we had additional information.  It's a safeguard.").

Villanueva, an experienced correctional officer, has been employed by the Sheriff's

Office since 2005.  In October 2019, Villanueva, a sergeant in the Sheriff's Office Strategic

Operations Center, served as, among other things, the liaison between all external agencies and

the Sheriff's Office.  Prior to starting this position, Villanueva completed 16 weeks of training

through the Sheriff's Office's training academy and received ongoing on-the-job training.  From

2013 until 2015 or 2016, Villanueva worked in the Sheriff's Office records office, where he

received on-the-job training on placing holds on inmates.

On November 1, 2019, a court sentenced Solis to time served (*i.e.*, 17 days) for

obstructing identification.  On November 12, 2019, a court ordered Solis released on an I-Bond

in the underlying unlawful possession of a firearm case.  The court conditioned that release on

3

Solis' provision of a buccal swab to determine parentage in *Nathan Macias*, 19JA00772, which
Solis did the following day. At this point, other than the hold, there was no reason for Solis to
remain at the Jail.

On November 15, 2019, Matthew Jaeky, an administrative assistant at the Jail sent an
email notification indicating Solis should be released from the Jail. After seeing the hold,
however, Jaeky sent a follow-up email cancelling Solis' release. Solis remained in custody until
January 17, 2020, when the Cook County State's Attorney's Office emailed "DOC Records,"
requesting that the writ for Solis be released, stating: "[h]e should not be held on this, it is not a
warrant. Please call me on my cell[.]" Doc. 60-15. The Jail finally released Solis on January
17, 2020—over two months after his court-ordered release date.

Solis filed this lawsuit on February 28, 2020. Doc. 1. He brings claims against Officer
Villanueva for violation of his Fourth Amendment rights (Count I); Cook County Sheriff Tom
Dart for failure to train under *Monell* (Count II); false imprisonment against Officer Villanueva
and the Cook County Sheriff's Office (Count III); and indemnification against Cook County for
any judgment against the Sheriff's Office (Count IV).

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to
any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the
pleadings and assess the proof as presented in depositions, documents, answers to
interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record.
Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992).
The party seeking summary judgment bears the initial burden of demonstrating that no genuine

4

dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted). The same standard applies when considering cross-motions for summary judgment. *Int'l Bhd. Of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). Therefore, when considering Solis' motion for summary judgment, the Court views all evidence in the light most favorable to Defendants, and when considering Defendants' motion for summary judgment, the Court views all evidence in the light most favorable to Solis. *Id.*

## ANALYSIS

The parties agree that Solis remained in custody 66 days beyond his release date. Villanueva seeks summary judgment on the basis that his actions were reasonable and that he is entitled to qualified immunity. Sheriff Dart seeks summary judgment on the *Monell* claim arguing that Solis has not identified a policy that caused his injury. And Solis moves for summary judgment on his Fourth Amendment and false imprisonment claims.

5

## I.    Fourth Amendment[2]

The Seventh Circuit has made clear that "all § 1983 claims for wrongful pretrial detention—whether based on fabricated evidence or some other defect—sound in the Fourth Amendment." *Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019); *see also Williams*, 967 F.3d at 632.  The Fourth Amendment "establishes the minimum constitutional 'standards and procedures' not just for arrest but also for ensuing 'detention.'" *Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)).  "The touchstone of the Fourth Amendment is reasonableness.  Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (internal quotation marks and citation omitted).  Reasonableness is a fact-specific inquiry. *Id.*

To detain someone for an extended pretrial period, the Fourth Amendment requires probable cause and "a decision by a neutral and detached magistrate rather than a law enforcement officer." *Williams*, 967 F.3d at 632 ("The standard for pretrial detention is probable cause, that is, official knowledge of 'facts and circumstances sufficient to warrant a prudent [person] in believing' the detainee has committed a criminal offense," (quoting *Gerstein*, 420 U.S. at 111)).

Here, the record does not support *any* cause for detaining Solis beyond his release date, let alone probable cause or a decision by a magistrate.  Notwithstanding this, Villanueva argues: (1) his actions were reasonable under the Fourth Amendment; (2) he lacked personal involvement because he did not know that placing the hold would prolong Solis' detention; and (3) he enjoys qualified immunity.

---

[2] Solis originally challenged his pretrial detention under both the Fourth and Fourteenth Amendments. Doc. 30 at 5–6.   Solis now agrees with Defendants, however, that in light of the Seventh Circuit's opinion in *Williams v. Dart*, 967 F.3d 625, 637 (7th Cir. 2020), the Fourth Amendment alone governs his claims.  Doc. 65 at 12.  Therefore, the Court grants Defendants' motion for summary judgment as to the Fourteenth Amendment portion of Count I.

A.     **Reasonableness of the "Hold"**

Villanueva placed a hold on Solis as a safeguard because he could not determine from the writ whether Solis was a defendant in the juvenile case. Villanueva argues that this was reasonable given the lack of information and the fact that the public has access to less information in juvenile cases. The Court disagrees.

Villanueva cites three cases in support of the reasonableness of his actions; however, each of these cases is distinguishable. First Villanueva points to *Johnson v. City of Chicago*, 711 F. Supp. 1465 (N.D. Ill. 1989), where officers discovered a warrant for an individual with the same name as the plaintiff and arrested the plaintiff. *Id.* at 1467. Finding no Fourth Amendment violation, the court noted that "[i]t would be a different matter if the police officers discovered information which revealed their mistake and then failed to promptly release [plaintff] from custody." *Id.* at 1468. Villanueva implies that he did not violate Solis' Fourth Amendment rights because he was unaware of his mistake, like the officers in *Johnson*. Unlike *Johnson*, Villanueva issued a hold based on a lack of information that called out for further investigation which he did not undertake. Villanueva knew that a writ of habeas corpus did not permit him to keep an individual in custody at the Jail. He also knew that a writ operates instead to instruct the Jail to transport someone in custody to court. Doc. 60-8 24:17-24; 25:1-24; 26:1-4. Rather than take the additional step to determine whether a hold was justified, Villanueva simply issued the hold knowing that it would operate to keep Solis detained based on a writ that did not support Solis' continued detention. That action fails the reasonableness test.

Villanueva next points to two cases, *Baker v. McCollan*, 443 U.S. 137 (1979), and *Hernandez v. City of Chicago*, No. 99 C 6441, 2001 WL 128246 (N.D. Ill. Feb. 9, 2001), where courts found no Fourth Amendment violations where the plaintiffs were arrested pursuant to

valid warrants but were, in fact, the wrong people. In *Baker*, the plaintiff's brother posed as the plaintiff, leading to a warrant being issued for the plaintiff's arrest. 443 U.S. at 140–41. In *Hernandez*, police arrested the plaintiff on a warrant for an individual with the same first and last names, birthday, and physical description. *Hernandez*, 2001 WL 128246, at *1. In both cases, although ultimately disproven, the police officers *had* probable cause when they arrested the plaintiffs. Unlike those cases, when Villanueva issued the hold on Solis, he had no reason to believe he had probable cause to support Solis's continued detention based on the writ in *State v. Martinez*.

Villanueva also relies on language in both *Baker* and *Hernandez* that "jailing a person for a period of time over his vigorous protest that he is the wrong person, without investigating or bringing him before a magistrate" can raise constitutional issues. *Hernandez*, 2001 WL 128246, at *4; *Baker*, 443 U.S. at 144 ("Obviously, one in [plaintiff's] position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment."). Villanueva argues that Solis should have complained about his unlawful detention to trigger his constitutional claims. Villanueva points out that Solis knew how to submit a grievance but did not, and that Solis could have communicated his concerns to correctional officers and counselors but did not. Solis, however, had no obligation to notify Defendants that they were violating his constitutional rights and Defendants do not cite any caselaw identifying such an obligation. Furthermore, whether Solis should or could have drawn Defendants' attention to his unlawful detention has no relevance as to whether Villanueva acted reasonably in placing the hold in the first place. Unlike an arrest warrant, the writ, on its face, would not meet the standards of the Fourth Amendment.

Finally, while it may be true that officers generally have less access to juvenile case information, this alone does not justify issuing a hold. Villanueva took no independent steps to identify Solis' role in that case despite his knowledge that a hold would result in Solis' continued incarceration. As such, no reasonable juror could find that Villanueva acted reasonably.

### B. Villanueva's Personal Involvement

"[T]o be liable under § 1983, the individual defendant must have 'caused or participated in a constitutional deprivation.'" *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (quoting *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994)). "An official causes a constitutional violation if he [or she] sets in motion a series of events that defendant knew or reasonably should have known would cause others to deprive plaintiff of constitutional rights." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1012 (7th Cir. 2000). Villanueva argues that he lacks personal involvement because he did not know the court ordered Solis to be released on November 12, 2019, and because he was not aware that Solis was still being held until the Jail released Solis in January 2020. In support, Villanueva cites *Luck v. Rovenstine*, 168 F.3d 323 (7th Cir. 1999), where an officer arrested the plaintiff without a warrant and the plaintiff never had a subsequent probable cause hearing. *Id.* at 325. The officer brought the plaintiff to a local jail after arresting him, where the sheriff then processed and held him. *Id.* After eight days, the sheriff received notice that the plaintiff was arrested without a warrant and without the benefit of a probable cause hearing before a judge or magistrate. *Id.* The sheriff subsequently contacted the prosecutor's office with this information, received an instruction to release the plaintiff, and did so that same day. *Id.* The Seventh Circuit affirmed the district court's ruling that the sheriff could not be held liable in his individual capacity because the sheriff's inaction did not "add up to the kind of personal involvement" usually required for individual liability. *Id.* at 327.

Unlike *Rovenstine*, Villanueva himself imposed the hold that resulted in Solis' illegal detention. And, unlike the sheriff in *Rovenstine* who took the affirmative action of contacting the prosecutor's office once he was aware that the plaintiff was arrested without a warrant and had no probable cause hearing – thus calling the legality of the plaintiff's detention into question, Villanueva failed to either conduct even a cursory review to determine whether placing the hold was appropriate prior to placing it or wait to place the hold until he received additional information describing Solis' status in the juvenile case. While Villanueva states that he was unaware that a judge had ordered Solis' release, Villanueva was certainly aware that placing a hold without sufficient investigation of its necessity could result in a prolonged and therefore unlawful detention. By failing to determine whether Solis was a defendant in the juvenile action or merely a witness before placing the hold that prevented Solis' release, Villanueva failed to act and did so with a reckless disregard of Solis' constitutional right; thus, establishing his personal involvement in violating Solis' Fourth Amendment rights.

### C. Qualified Immunity

Villanueva argues that even if placing a hold on Solis was improper, qualified immunity protects him from liability. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, --- U.S. ----, 137 S. Ct. 548, 551 (2017) (citation omitted) (internal quotation marks omitted). "In other words, qualified immunity shields from liability [defendants] who act in ways they reasonably believe to be lawful." *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) (quoting *Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008)) (internal quotation marks omitted). Once raised by the defendant, "a plaintiff must show (1) that the defendant violated a constitutional right, and (2) that the right was clearly established at the time

10

so that it would have been clear to a reasonable officer that [his] conduct was unlawful in the situation." *Id.*

Villanueva does not argue, nor could he, that he did not violate Solis' constitutional right. *See Williams*, 967 F.3d at 632 (probable cause required for an extended pretrial detention); *see also Manuel*, 137 S. Ct. at 913 (same). Thus, the Court need answer only the remaining question: whether this right was clearly established at the time. To prove this element, plaintiff can either: (1) cite a "reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand;" or (2) show "the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (citation omitted).

At the outset, the Court finds that a reasonable person would have recognized Villanueva's actions violated the law because the right not to be imprisoned without probable cause is obvious and clearly established. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)).

Solis also identifies recent analogous cases showing that being detained beyond one's release date, without probable cause was clearly illegal in October 2019 when Villanueva imposed the hold. Solis need not "find a case 'on all fours' with the facts here," *Leiser*, 933 F.3d at 702; rather, he need only "show some settled authority that would have shown a reasonable officer in [Villanueva's] position that [his] alleged actions violated the Constitution." *Id.* For example, in *Russell v. Lazar*, the Court noted that "in 2001, the Seventh Circuit recognized a right to be released at the lawful conclusion of a prison sentence and suggested that this was

11

probably clearly established as early as the late 1980s and early 1990s." 300 F. Supp. 2d 716, 724 (E.D. Wis. 2004) (citing *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001)). Although an Eighth Amendment case, *Russell* demonstrates that a reasonable officer should have known that Solis' detention was unlawful.

Other courts in this Circuit have also found this right to be clearly established. *See Santos v. Curran*, No. 17 C 2761, 2018 WL 888758, at *4 (N.D. Ill. Feb. 14, 2018) (denying motion to dismiss in part because clearly established law prevented plaintiff from being held without probable cause); *see also Rivas v. Martin*, 781 F. Supp. 2d 775, 781 (N.D. Ind. 2011) ("It is clearly established that a person's constitutional rights are violated if he or she is held for an extended period without a probable cause determination, a warrant, or some other source of authority for his or her detention."). Villanueva attempts to distinguish these cases by arguing that the procedural posture was different (both *Rivas* and *Santos* were at the motion to dismiss stage) and that in those cases the plaintiffs protested their detentions. Regardless of the procedural posture, *Rivas* and *Santos* illustrate the well-established rule that a person cannot be held beyond their release date without probable cause. Whether Solis notified Villanueva or anyone else that he was being held illegally has no bearing on whether Villanueva violated clearly established law. These cases, together with the obvious nature of the violation, preclude the application of qualified immunity to Villanueva's actions.

## II. *Monell* Liability

Defendants argue that Solis has not adequately proven a *Monell* claim against Sheriff Dart. Pursuant to *Monell*, a plaintiff can sue a municipality under § 1983 when the municipality's policy or practice was the "moving force of the constitutional violation." 436 U.S. at 694. A plaintiff can demonstrate this with: (1) evidence of enforcement of an express

12

policy that would cause the constitutional deprivation; (2) evidence of a common practice so widespread it constituted a custom or usage with the force of law, despite not being a written or express policy; or (3) evidence that a person with final policy-making authority caused the harm. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015).

Solis argues that this Court should hold the Sheriff's Office liable under *Monell* because it failed to adequately train its record division staff on when it is lawful to impose a hold, and that the Sheriff's Office has a gap in policy regarding the same. A plaintiff may prevail on a *Monell* claim based on inadequate training or supervision by showing "(1) failure to provide adequate training in light of foreseeable consequences; or (2) failure to act in response to repeated complaints of constitutional violations by officers." *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029–30 (7th Cir. 2006); *Lee v. McNeal*, No. 07 C 6856, 2008 WL 4812653, at *6 (N.D. Ill. Oct. 29, 2008). Liability for failure to train "does not require proof of widespread constitutional violations before that failure becomes actionable; a single violation can suffice where a violation occurs and the plaintiff asserts a recurring, obvious risk." *Flores v. City of S. Bend*, 997 F.3d 725, 731 (7th Cir. 2021) (collecting cases).

Defendants argue that Solis cannot prove a failure to train claim because what happened to Solis was not an obvious risk and is unlikely to reoccur, and because Solis cannot identify any other specific instances of a hold leading to unlawful pretrial detention. The Court disagrees. In *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917 (7th Cir. 2004), an inmate died as the result of a prison failing to train its staff on suicide prevention. *Id.* at 927. The Seventh Circuit held that although plaintiff could not prove any other inmates had died as a result of suicide, this failure to train supported *Monell* liability because the prison did not "get a one free suicide pass." *Id.* at 927–29. Similarly, the Sheriff's Office does not get a "one free

13

unlawful detention pass." The Court finds that training record division staff to place a hold on individuals anytime a writ is received without additional information creates the foreseeable consequence that sometimes individuals will be held without probable cause in violation of the Fourth Amendment. If the officer places a hold without additional information, there are two possible outcomes: (1) either the individual is a defendant in the juvenile matter and thus is properly detained; or (2) the individual is a witness or has some involvement other than being a defendant, in which case detention based on the writ alone is not appropriate. Thus, anytime the second outcome occurs, there will be a risk that an individual is being held without probable cause. Because Defendants should have foreseen this obvious risk and implemented training to avoid it, the Court denies Defendants' motion for summary judgment as to Count II.

**III.     State Law False Imprisonment**

Solis seeks summary judgment on his Illinois state law claim for false imprisonment. Solis argues that Villanueva, and the Sheriff's Office under a theory of *respondeat superior*, falsely imprisoned him by unreasonably detaining him beyond his release date. Defendants cross-move for summary judgment, arguing that Solis has not established the requisite intent and that his claim is barred by the Illinois Tort Immunity Act, 745 ILCS § 10/1-101, *et seq.*

"The essential elements of a cause of action for false imprisonment are that (1) the plaintiff was restrained by the defendant and (2) the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff." *Hana v. Marshall Field & Co.*, 279 Ill. App. 3d 784, 793 (1996). The plaintiff must also show "an actual or legal intent to restrain." *Campbell v. Kaczmarek*, 39 Ill. App. 3d 465, 469 (1976).

As discussed above, Villanueva did not have reasonable grounds to believe Solis committed an offense. Villanueva certainly restrained Solis by placing the hold. Villanueva

14

argues, however, that he lacked the requisite intent because he did not mean to hold Solis beyond the October 29, 2019, court date for which the writ was issued. But, by placing the hold, Villanueva intended to prevent Solis' release. That the Jail detained Solis longer than the writ date does not change Villanueva's state of mind at the time he issued the hold.

Villanueva next argues that Section 2-202 of the Illinois Tort Immunity Act precludes liability "for [an] act or omission in the execution of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS § 10/2-202. Villanueva argues that his conduct was not willful or wanton and thus the Illinois Tort Immunity Act precludes liability. The Illinois Tort Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property. 745 ILCS § 10/1-210. While the Court agrees that the record does not show an "actual or deliberate intention" by Villanueva to cause Solis harm, the record does show that Villanueva's indifference or conscious disregard for whether Solis would be unlawfully detained. Specifically, the writ did not show Solis to be a defendant in the juvenile case. With no additional information, Villanueva issued the hold as a "safeguard" without conducting *any* investigation. Villanueva's lack of any effort to prevent an unlawful detention demonstrates at least a conscious disregard to the potential harm to Solis. Because no reasonable juror could find otherwise, the Court grants Solis' motion for summary judgment as to Count III.

## CONCLUSION

For the foregoing reasons, the Court grants Solis' amended motion for summary judgment [62] as to Counts I and III, and denies as moot Solis' original motion for summary judgment [48]. The Court grants Defendants' motion for leave to file an amended memorandum

of law in support of their motion for summary judgment [66] and grants Defendants' motion for an extension of time [68] to respond to Solis' amended motion for summary judgment. The Court grants in part and denies in part Defendants' motion for summary judgment [52]. To the extent it relies on the Fourteenth Amendment, the Court dismisses Count I. The Court denies the remainder of Defendants' motion for summary judgment.

Dated: September 29, 2022

SARA L. ELLIS
United States District Judge